

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA and the STATE OF NEW YORK *ex rel.* ERIC ROMERO, | **COMPLAINT** **JURY TRIAL DEMANDED** |
| Plaintiff/Relator, | **FILED UNDER SEAL AND *IN CAMERA* PURSUANT TO 31 U.S.C. § 3730(b)** |
| v. | |
| NEW YORK INSTITUTE OF TECHNOLOGY, | Civ. No. |
| Defendant. | |

On behalf of the United States of America ("United States") and the State of New York ("New York"), relator Eric Romero ("Relator") files this *qui tam* Complaint against New York Institute of Technology ("NYIT") (collectively, "Defendant"), by and through Relator's attorneys, and alleges as follows:

## I.   INTRODUCTION

1. This is a civil action brought by Relator Eric Romero, pursuant to 31 U.S.C. § 3730(b)(1) on his own behalf and on the behalf of the United States and New York State against Defendant under the False Claims Act, 31 U.S.C. §§ 3729 *et seq.* ("FCA") and under the New York False Claims Act, N.Y. State Fin. Law §§ 187 *et seq.* ("New York FCA") to recover damages sustained, and penalties owed to, the United States and New York State as a result of Defendant having knowingly presented or caused to be presented false claims and statements for the payment of funds, as well as for retaliation.

2. Defendant engaged in the following scheme to defraud the Government:

NYIT, a university, falsely altered its students' grades and attendance records to keep students enrolled and eligible for federal and state financial aid, in order unlawfully pocket the funds. NYIT made false representations and certifications to the U.S. Department of Education and the State of New York to induce them to allow NYIT to participate in the federal and state student aid programs and to ultimately obtain funds. NYIT's record falsification also amounted to a "pay to stay" scheme for its foreign students, resulting in false student visa submissions, and allowing individuals to work in the U.S. without applying and paying for an H-1B visa.

3.   Defendant is liable for treble damages and penalties under the FCA and the New York FCA for operating this scheme and unlawfully obtaining reimbursement from the United States and New York. Defendant is also separately liable for its unlawful termination of Relator and other retaliation.

## II.     JURISDICTION AND VENUE

4.   Pursuant to 28 U.S.C. § 1331, this District Court has original jurisdiction over the subject matter of this civil action because it arises under the laws of the United States the FCA. In addition, the FCA specifically confers jurisdiction upon the United States District Court. 31 U.S.C. § 3732(b).

5.   Pursuant to 28 U.S.C. § 1367, this District Court has supplemental jurisdiction over the subject matter of the New York FCA claim because the claim is so related to the claims within this Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. The District Courts shall have jurisdiction over any action brought under the laws of any State for the recovery of funds paid by a State or Local Government if the action arises from the same transaction or occurrence as an action brought under section 31 U.S.C. § 3730. 31 U.S.C. § 3732(b).

2

6.  This District Court has personal jurisdiction over Defendant pursuant to 31 U.S.C. § 3732(a) because the FCA authorizes nationwide service of process and Defendant have sufficient minimum contacts with the United States.

7.  Venue is proper in this District pursuant to 31 U.S.C. § 3732(a) because acts complained of herein occurred within this judicial district.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant transacts business in this District and, in furtherance of their fraudulent scheme, caused to be submitted or conspired to submit false claims in this District.

### III.   THE PARTIES

#### a.   Relator Eric Romero

8.  Eric Romero brings this action on behalf of the United States pursuant to the FCA, and New York pursuant to the New York FCA.  Eric Romero is a former employee of NYIT where he was a visiting professor in the School of Management.

#### b.   Plaintiff the United States of America

9.  Plaintiff is the United States, acting through its agency the Department of Education ("DOE"), which administers the federal student financial aid programs contained in Title IV of the Higher Education Act of 1965 ("Title IV"), 20 U.S.C. §§ 1070 *et seq.*

#### Plaintiff New York State

10.  Plaintiff New York State, acting through its agencies the New York Department of Education, ("NY DOE"), the New York Board of Regents, and the New York State Higher Education Services Corporation ("HESC").

3

### c.   Defendant NYIT

11. Defendant NYIT is a private, non-profit university with over 14,000 students in seven colleges and schools. It is accredited by the Middle States Association of Schools and Colleges and is a participant in the student loan and grant programs, administered by the U.S. Department of Education, and federally funded.

### IV.   THE LAW

#### a.   Title IV Federal Funds

12.   Pursuant to Title IV, Congress established various student loan and grant programs.  To be eligible to receive Title IV funds, a school must enter into a program participation agreement ("PPA") with the Department of Education.  In signing such an agreement, the school expressly certifies to comply with all federal statutes applicable to Title IV and the regulations promulgated thereunder.  Once qualified, students who currently attend or plan to attend the school may apply to receive Title IV funds by completing the Free Application for Federal Student Aid.

13. By entering the PPA, the school also certifies it will establish and maintain such administrative and fiscal procedures and records as may be necessary to ensure proper and efficient administration of funds received from the Secretary or from students under the Title IV programs.  34 C.F.R. § 668.14.  This includes "[d]ocumentation" of student eligibility and refunds, see 34 C.F.R. § 668.24(c)(iii)-(iv), to which grade and attendance records are necessary.

14. The Department of Education's regulations obligate schools to review their students' academic progress at the end of each year. Id. § 668.34(d). For students "enrolled in a program of study of more than two academic years," Title IV eligibility beyond the second year partially depended on having made "satisfactory progress." Id. § 668.34(a). This means they had to have

"a grade point average of at least a 'C' or its equivalent[ ] or ha[ve] academic standing consistent with the institution's requirements for graduation" at the end of the second year. Id. § 668.34(b).

15. When a student withdraws from a school during an enrollment period, Title IV provides for how much financial aid is "earned" by the student and when (and in what amount) the institution and/or the student must return the funds awarded and/or disbursed. *See* 20 U.S.C. § 1091b. Notably, if the student has completed 60% of the payment period or period of enrollment before withdrawing, the statute provides that 100% of the grant or loan assistance will be considered to have been "earned," and need not be refunded, regardless of whether the student completes the remaining amount of the program. *Id. See also* 20 U.S.C. § 1094(a) (22) (PPA requires that the "institution will comply with the refund policy established pursuant to section 1091b").

16. "Falsification of any document received from a student or pertaining to a student's eligibility for assistance under" Title IV is an example of fraud that "cause[s] misuse and the likely loss of Title IV, HEA program funds." § 668.83(c)(2)(iii)(A).

### b. New York State Funds

17. Like federal funding, to be eligible for its student to receive financial assistance from New York State, a school must enter into an "awards participation agreement" with HESC.   The agreement provides that the school will comply with all laws and regulations concerning the financial assistance program.  8 N.Y.C.R.R § 2205.3(e)(1).

18. New York has requirements that are like the federal requirements as to required "satisfactory progress" and grade point average, for the student's continued eligibility to receive state funds. 8 N.Y.C.R.R § 145-2.2.  New York also has similar requirements as to the accuracy

of eligibility records such as grades and attendance, and the reporting and certifying of the same.

8 N.Y.C.R.R § 2205.3 (b), (e), (f).

**The False Claims Act**

19.  The FCA imposes liability upon

(1) any person who:

(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

(B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claims;

(C) conspires to commit a violation of subparagraph (A), (B), (D), (E), (F), or (G);
. . .

(G) knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government . . .

is liable to the United States Government for a civil penalty of [$5,500 to $11,000] . . . plus 3 times the amount of damages which the Government sustains because of the act of that person.

31 U.S.C. § 3729(a)(1) (A), (B), (C), and (G) (violations occurring after September 29, 1999, are subject to $5,500 to $11,000, *see* 28 C.F.R. § 85.3(a)(9)(2014)).

20.  A claim is defined as "any request or demand, whether under a contract or otherwise, for

money or property and whether or not the United States has title to the money or property", that

is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government—

(I) provides or has provided any portion of the money or property requested or demanded; or

(II) will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded; and

31 U.S.C. § 3729(b)(2)(A)(i)-(ii).

21.  A statement or claim is material if it has a "natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." *Id.* at § 3729(b)(4).

22.  Further, the FCA protects individuals who are retaliated against, including termination, if the individual is engaging in conduct in an effort stop his or her employers from violating the FCA.  31 U.S.C. § 3730(h).

### c. The New York False Claims Act

23.  The New York FCA imposes liability on

(1) any person who

(a) knowingly presents, or causes to be presented a false or fraudulent claim for payment or approval;

(b) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;

(c) conspires to commit a violation of paragraph (a), (b), (d), (e), (f) or (g) of this subdivision;
. . .

(g) knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the state or a local government; . . .

(h) . . . shall be liable to the state or a local government, as applicable, for a civil penalty of not less than six thousand dollars and not more than twelve thousand dollars, plus three times the amount of all damages, including consequential damages, which the state or local government sustains because of the act of that person.

N.Y. State Fin. Law § 189(1)(a),(b),(c),(g), and (h).

24.  The New York FCA defines claim and materiality the same as the FCA, except that claims are defined as claims to the State or Local Government, and not the Federal Government. *Id.* at § 188(1) and (5).

25.  Like the FCA, the New York FCA also protects individuals against retaliation from his or employers relating to efforts to stop fraud.

## V.    THE FACTS

### a.  NYIT Participation in Federal and NY Financial Aid Programs

26. NYIT participates in the federal Title IV and New York State financial aid programs. Most NYIT students receive some form of financial aid, millions of dollars of which comes from the federal and New York State governments.   For example, in the 2015/2016 school year, freshmen undergraduate students at NYIT alone received over $3 million of federal grants, over $2 million in federal loans, and over $1.3 million in New York State grants.

27.   NYIT sought and obtained eligibility by entering multiple PPAs with the DOE over the years, including on August 22, 2006, January 19, 2010.  It also entered APAs with the HESC.

28. NYIT therefore certified that it would properly report and document student eligibility and refunds, which includes grade and attendance records, each time it entered a PPA or APA with the DOE or HESC.

29. Additionally, NYIT was required to and did certify that its students were making "satisfactory progress," and by their second years had "C" grade averages so that they could continue to receive financial aid.

### b.  Grade Inflation and Attendance Scheme

30. NYIT entered into a scheme over the years whereby it falsified records and submitted false statements and certifications to the Government to keep its students eligible for state and federal student aid funds, to keep student enrollment from falling, and to ensure that it kept the maximum amount of financial aid funds for itself.

31. The scheme comprised of a school policy whereby it would raise students' grades despite not warranting such, and that students would not be allowed to fail. It also enacted a policy whereby a student attending a class once, would count as if satisfactorily attending for the entire semester. Finally, it enacted a policy to ignore student plagiarism. These policies and the resulting false statements and certifications allowed NYIT to keep its students enrolled and receiving financial aid that ultimately went to NYIT. Additionally, Defendant's acts caused students to be enrolled long enough so it could fraudulently keep all financial aid funding and not be forced to refund any of the received funds.

32. NYIT knew that its conduct was fraudulent. It maintained official school grading policies, which for example, provided that a graduate student's score under 70 would result in a failing grade, and that student required a B average to graduate. It also maintained a strict attendance policy requiring students to attend all class sessions, and to have less than 10% unexcused absences. Additionally, NYIT knew of its obligations to comply with DOE and HESC regulations to receive federal and state financial aid funding since it had been sued under the False Claims Act in 2012 for failing to do so.

33. NYIT knowingly enacted this scheme by instructing its professors to carry out the scheme. For example, on September 22, 2016, Nancy Borchers, the University Registrar sent an email to faculty stating that attendance records needed to be submitted on September 30, 2016, even though two and half months remained in the semester. She confirmed in a phone call with the Relator that students only are required to attend once to be marked as having sufficient attendance for the semesters.

34. The same was true with the falsification of grades. For example, on November 5, 2016, Rajendra Tibrewala, the Department Chair for the NYIT School of Management, told Relator

9

that he was worried about the grades in his two management classes and instructed Relator all the students needed to pass. This instruction was regular, and Tibrewala suggested that Relator change his grading system and lower the grading scale from NYIT's standard to ensure that the students passed, to keep enrollment up and the revenue coming in. He explained that grade inflation was necessary given the poor quality of the student body. The dean and associate dean of the School of Management confirmed these motives by telling Relator that the quality of the student body was very poor, and that school was focused on maintaining enrollment despite this. The dean even confirmed that plagiarism among the student body would be ignored to reach these goals. When Relator refused to change the grades, Tibrewala continued to pressure him to do so, and when Relator again refused, NYIT changed the grades anyway. NYIT's falsifications resulted in the unwarranted passing of seven students, who upon information and belief were receiving federal and/or state financial aid.

35. Thus, those seven students are seven examples of false claims that NYIT made to the Government. By falsely certifying that these students, (who were each in their second years), were making "satisfactory progress," and maintained "C" grade point averages, NYIT submitted false claims to the Government, and were able to keep all the financial aid funds for those student that it received.

36. Additionally, when entering into PPAs and APAs with DOE and HESC, NYIT, falsely certified it would keep accurate student records. Defendant knew that this included keeping accurate records of student attendance and grades. Indeed, NYIT had an official school policy to do as such. It nevertheless falsified grades and attendance records both before and after signing the PPAs and APA, and NYIT management, such as Tibrewala, confirmed that his was to keep enrollment and revenue up. NYIT thus did not intend to keep true grading and attendance

records when it entered into the PPAs and APAs, and fraudulently induced DOE and HESC to enter into those agreements.

37. NYIT's false statements that it was keeping accurate grade and attendance records, and that its students were making satisfactory progress were material to the federal government's and New York State's decisions to provide the financial aid funding to NYIT and its students. The DOE and HESC would not have entered the PPAs and APAs with NYIT, had they known NYIT was not going to comply with their requirements. The PPAs and APAs were required by law to conditional initial and continued eligibility of NYIT on its requirements including its record keeping. *See, e.g.*, 20 U.S.C. 1094(a)1 34 C.F.R 668.14(a)(1), (b)(4). The agreements also expressly conditioned the initial and continuing eligibility for government funding on entering into the agreements.   When colleges do no adhere to these requirements, there are consequences, including that the DOE and HESC sometimes terminate schools for falsifying attendance and grade records.   Additionally, falsifying grades and attendance records also can lead to students receiving financial aid that would otherwise not receive such funds.

38. Separately, the attendance and grade scheme also amounted to Visa fraud and a "pay to stay scheme." NYIT has many foreign students.  To enroll and stay in the U.S., those students must obtain F-1 visas and submit I-20 applications.  Additionally, to work in the U.S. those students may submit application to the Optional Practical Training program ("OPT"), by submitting an I-765 form.  By allowing NYIT foreign student to remain unlawfully enrolled through its falsification of grades and attendance records, NYIT caused the submission of false claims to the United States, allowing individuals to fraudulently stay and work in the U.S. Without and F-1 visa and participating in OPT, an individual would have to apply for an H1-B

visa and be subject to significantly higher application fees. The I-765 fee is approximately $400, while the H1-B fee ranges from approximately $1,750 to several thousand dollars.

**g.    Retaliation**

39.   Relator Eric Romero was an employee of NYIT from September 1, 2016 through August 31, 2017, as a visiting professor at the school of management.

40.  Relator became aware of NYIT's fraudulent conduct soon after he began employment. In November 2016, Rajendra Tibrewala, the Department Chair for the NYIT School of Management, instructed him to go along with NYIT's scheme and alter the grades of his management classes and to pass all students.  This continued throughout the fall and winter of 2017.  Relator told Tibrewala that going along with this scheme would constitute fraud and refused to do so.

41. On December 5, 2016, Tibrewala removed Relator from his Management 501 class in retaliation for his refusing to pass all students.  Tibrewala took over the class so he could finish the semester and ensure all students passed.

42. In the classes Relator continued to teach, students earned failing grades, and grades lower than Tibrewala requested.

43. In February 2017, Tibrewala requested that Relator change the Fall 2016 semester grades, but he again refused.

44.  In retaliation, NYIT removed Relator from four classes mid-semester as well as one the day before it was scheduled to start.  He was also prevented from teaching any graduate course and limited in the spring semester to one sole class with one student enrolled, in retaliation, and to ensure he would not get in the way of the fraudulent scheme.

## VI.    CONCLUSION

72.  Defendant, through its illegal and immoral actions, have defrauded the Government by engaging in a scheme for their own personal gain.  Finally, Relator, aware of such illegal activities, was fired for refusing to go along with the fraudulent scheme and refusing to pass students or raise their grades who were not entitled to such changes.  These actions result in the United States and New York paying Defendant money it is not entitled to, a violation of the False Claims Act and the New York False Claims Act.

### FIRST CLAIM

Violations of the Federal False Claims Act
(31 U.S.C. § 3729 (a)(1)(A))
Presenting False Claims for Payment

73.  Relator incorporates by reference the paragraphs above as if fully set forth herein.

74.  Relator seeks relief against Defendant under Section 3729(a)(1)(A) of the False Claims Act, 31 U.S.C. § 3729(a)(1)(A).

75.  As set forth above, Defendant knowingly presented, or caused to be presented, false or fraudulent claims for payment or approval in connection with the submission of NYIT's and its student requests for financial aid funds from the DOE, as well as it students' visa applications.

76.  The United States paid such false or fraudulent claims because of Defendant's acts and conduct.

77.  By reason of Defendant's false claims, the United States has been damaged in a substantial amount to be determined at trial.

### SECOND CLAIM

Violations of the Federal False Claims Act
(31 U.S.C. § 3729 (a)(1)(B))
Use of False Statements

78.  Relator incorporates by reference the paragraphs above as if fully set forth herein.

79. Relator seeks relief against Defendant under Section § 3729(a)(1)(B) of the False Claims Act, 31 U.S.C. 3729(a)(1)(B).

80. As set forth above, Defendant knowingly made, used, or caused to be made or used, false records or statements material to false and fraudulent claims, in connection with the submission of NYIT's and its student requests for financial aid funds from the DOE, as well as its students visa applications.

81. The United States paid such false or fraudulent claims because of Defendant's acts and conduct.

82. By reason of NYIT's false claims, the United States has been damaged in a substantial amount to be determined at trial.

### THIRD CLAIM

Violations of the Federal False Claims Act
(31 U.S.C. § 3729 (a)(1)(G))
Use of False Statements

83. Relator incorporates by reference the paragraphs above as if fully set forth herein.

84. Relator seeks relief against Defendant under Section § 3729(1)(G) of the False Claims Act, 31 U.S.C. § 3729(a)(1)(G).

85. As set forth above, Defendant knowingly made, used, or caused to be made or used, false records or statements material to an obligation to pay or transmit money or property to the Government, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the Government in connection in connection with the submission of NYIT's and its student requests for financial aid funds from the DOE.

96. The State of New York paid NYIT through its students' financial aid packages because of Defendant's fraudulent conduct.

86. Defendant failed to pay or transmit money due to the United States because of Defendant's acts and conduct.

87. By reason of the Defendant's use of false statements, the United States has been damaged in a substantial amount to be determined at trial.

## FOURTH CLAIM

### Violations of the New York State False Claims Act
### (N.Y. State Fin. Law § 189 (1)(a))
### Presenting False Claims For Payment

88. Relator incorporates by reference the paragraphs above as if fully set forth herein.

89. Relator seeks relief against Defendant under Section 189 (1)(a) of the New York False Claims Act, NY State Finance Law § 189 (1)(a).

90. As set forth above, NYIT knowingly or acting with deliberate ignorance or with reckless disregard for the truth, presented, or caused to be presented, false and fraudulent claims for payment or approval in connection with the submission NYIT's in connection with the submission of NYIT's and its student requests for financial aid funds from HESC.

96. The State of New York paid NYIT through its students' financial aid packages because of Defendant's fraudulent conduct.

92. By reason of Defendant's conduct, the State of New York has been damaged in a substantial amount to be determined at trial.

## FIFTH CLAIM

### Violations of the New York State False Claims Act
### (N.Y. State Fin. Law § 189 (1)(b))
### Use of False Statements

93. Relator incorporates by reference the paragraphs above as if fully set forth herein.

94. Relator seeks relief against Defendant under Section 189 (1)(b) of the New York False Claims Act, N.Y. State Fin. Law § 189 (1)(b).

95. As set forth above, NYIT knowingly or acting in deliberate ignorance or in reckless disregard for the truth, made, used, or caused to be made and used, false records and statements, in order to get false or fraudulent claims paid or approved by the State of New York in connection with the submission of NYIT's and its student requests for financial aid funds from HESC.

96. The State of New York paid NYIT through its students' financial aid packages because of Defendant's fraudulent conduct.

97. By reason of Defendant's conduct, the State of New York has been damaged in a substantial amount to be determined at trial.

### SIXTH CLAIM

Violations of the New York State False Claims Act
(N.Y. State Fin. Law § 189 (1)(g))
Use of False Statements

98. Relator incorporates by reference the paragraphs above as if fully set forth herein.

99. Relator seeks relief against NYIT under Section 189 (1)(g) of the New York False Claims Act, N.Y. State Fin. Law § 189 (1)(g).

100. As set forth above, NYIT knowingly or acting in deliberate ignorance or in reckless disregard for the truth, made, used, and caused to be made and used, false records and statements, in order to conceal, avoid, or decrease the obligation to pay or transmit money or property to the State of New York in connection with moneys it was required to return for ineligible students in connection with New York student financial aid funding.

101. NYIT failed to pay or transmit money due to the State of New York because of Defendant's acts and conduct.

102.  By reason of Defendant's acts and conduct, the State of New York has been damaged in a substantial amount to be determined at trial.

## SEVENTH CLAIM

Violations of the Federal False Claims Act
(31 U.S.C. § 3730 (h))
Retaliation

103.  Relator incorporates by reference the paragraphs above as if fully set forth herein.

104.  NYIT violated Section § 3730(h) of the False Claims Act, 31 U.S.C. § 3730(h).

105.  NYIT intentionally retaliated against Relator by removing him from his classes and failing to renew his contract.

106.  Such conduct by NYIT was due to actions taken in furtherance of this action, and it had actual and constructive knowledge of such actions.

107.  Such conduct by NYIT has damaged Relator in a substantial amount, including but not limited to personal hardship and economic loss, in an amount to be determined at trial.

## EIGHTH CLAIM

Violations of the New York State False Claims Act
(N.Y. State Fin. Law § 191)
Retaliation

108.  Relator incorporates by reference the paragraphs above as if fully set forth herein.

109.  NYIT violated Section 191 of the New York False Claims Act, N.Y. State Fin. Law § 191.

110.  NYIT has intentionally retaliated against Relator by removing Relator from his classes and failing to renew his contract.

111.  Such conduct by NYIT was due to actions taken in furtherance of this action, and it had actual and constructive knowledge of such actions.

17

112.  Such conduct by NYIT has damaged Relator in a substantial amount, including but not limited to personal hardship and economic loss, in an amount to be determined at trial.

**WHEREFORE**, The United States and the State of New York *ex rel.* Eric Romero request that judgment be entered in their favor and against Defendant as follows:

a)  On the First, Second and Third Claims for Relief (Violations of the False Claims Act, 31 U.S.C. § 3729(a)(1)(A), (B) and (G), for treble the United States' damages, in an amount to be determined at trial, and an $11,000 penalty for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendant; and

b)  Awarding Relator the Relator's Share pursuant to 31 U.S.C. § 3730(d)(1) or (2); and

c)  On the First, Second, and Third Claims for Relief, an award of costs and attorney's fees pursuant to 31 U.S.C. § 3730(d); and

d)  On the Fourth, Fifth and Sixth Claims for relief (Violations of the New York False Claims Act, N.Y. State Fin. Law § 189(1)(a), (b), and (g), for treble the State of New York's damages, in an amount to be determined at trial, plus a $12,000 penalty for each false claim; and

e)  Awarding Relator the Relator's share pursuant to NY State Finance Law § 190(6); and

f)  On the Fourth, Fifth, and Sixth Claims for Relief, an award of costs and attorney's fees pursuant to N.Y. State Fin. Law § 190(7); and

g)  On the Seventh and Eighth Claims for Relief (Violations of the False Claims Act, 31 U.S.C. § 3730(h) and of the New York False Claims Act, N.Y. State Fin. Law § 191 awarding Relator against Defendant NYIT two times back pay and interest on the back pay and all special damages sustained as a result of the discrimination including but not limited to litigation costs and reasonable attorneys' fees; and

h)  Awarding any further relief this Court deems proper.

**JURY TRIAL IS DEMANDED**

Dated: New York, New York
       August 27, 2018

                                        SADOWSKI KATZ LLP

                                        _(signature)_
                                        _____
                                        Raphael Katz
                                        830 Third Avenue, 5th Floor
                                        New York, New York 10022
                                        Telephone: (646) 503-5341
                                        rkatz@sadowskikatz.com

                                        Jeremiah Frei-Pearson
                                        FINKELSTEIN, BLANKINSHIP
                                        FREI-PEARSON & GARBER,
                                        LLP
                                        445 Hamilton Avenue, Suite 605
                                        White Plains, New York 10601
                                        Telephone: (914) 298-3281
                                        Facsimile: (914) 298-3329
                                        jfrei-pearson@fbfglaw.com

                                        *Attorneys for Relator Eric Romero*

TO:

United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007

Attorney General
Civil Division
United States Department of Justice
950 Pennsylvania Avenue, NW
Washington, D.C. 20530-0001

New York State Attorney General
120 Broadway, 12th Floor
New York, New York 10271