USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: __3/31/22__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x

UNITED STATES OF AMERICA and the STATE :
OF NEW YORK *ex rel.* ERIC ROMERO,  :
   :
                            **Plaintiff/Relator,**   :      **18-cv-7884 (ALC)**
   :
       -against-   :      **OPINION & ORDER**
   :
NEW YORK INSTITUTE OF TECHNOLOGY,  :
   :
                            **Defendant.**   :
------------------------------------------------------------- x

**ANDREW L. CARTER, JR., District Judge:**

      Plaintiff-Relator brings this *qui tam* action against Defendant New York Institute of Technology ("NYIT") under the False Claims Act, 31 U.S.C. §§ 3729 *et seq*. ("FCA"), and under the New York False Claims Act, N.Y. Fin. Law §§ 187 *et seq*. ("NYFCA"), to recover damages resulting from Defendant's false claims and statements to the government for the payment of funds from student financial aid programs, as well as damages for retaliation. The government declined to intervene in this case. Before the Court is Defendant's motion to dismiss. For the reasons set forth below, the motion is GRANTED and the case is DISMISSED.

## BACKGROUND

      When determining whether to dismiss a case, the court accepts as true all well-pleaded factual allegations in the complaint and draws all reasonable inferences in the relator's favor. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). Furthermore, "[a] complaint is deemed to include any written instrument attached to it as an exhibit." *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004); Fed. R. Civ. P. 10(c). The following facts, alleged in the First Amended

Complaint ("FAC" or "Complaint"), ECF No. 27, are thus assumed to be true for the purposes of this motion.[1]

Relator was employed as a visiting professor at NYIT's School of Management from September 2016 to August 2017. FAC ¶¶ 8, 51. As an educational institution with students receiving financial aid, NYIT entered into program participation agreements with the U.S. Department of Education, in which it certified that it would "establish and maintain such administrative and fiscal procedures and records as may be necessary to ensure proper and efficient administration of funds received from the Secretary or from students under the Title IV programs." *Id*. ¶ 13 (citing 34 C.F.R. § 668.14). NYIT also certified it would abide by federal statutes and regulations applicable to Title IV, including regulations obligating those schools receiving federal student financial aid to "establish a reasonable satisfactory academic progress policy," which would include a requirement that at the end of their second year, students have "a grade point average of at least a 'C' or its equivalent, or ha[ve] academic standing consistent with the institution's requirements for graduation." *Id.* ¶ 15 (citing 34 C.F.R. § 668.34(a) and (b)).

Similarly, New York State requires educational institutions receiving financial aid from the state to enter "awards participation agreements," which obligate those institutions to accurately report compliance with the eligibility requirements. *Id*. ¶¶ 20–21. According to Relator, New York's requirements related to satisfactory academic progress are similar to their federal counterparts. *Id*. ¶ 24. The Complaint alleges that NYIT "entered into a scheme over the years whereby it falsified records and submitted false statements and certifications to the Government to keep its students eligible for state and federal student aid funds, to keep student enrollment from

---

[1] The Complaint also brings allegations of fraud relating to attendance requirements and fraud relating to visas for foreign students. "[A] court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned." *Jackson v. Fed. Exp.*, 766 F.3d 189, 198 (2d Cir. 2014). Thus, the Court dismisses as unopposed the claims related to visa and attendance fraud.

failing, and to ensure that it kept the maximum amount of financial aid funds for itself." *Id*. at 11, ¶ 30.[2]

Relator alleges that NYIT officially mandates minimum grade requirements to pass a course and graduate. *Id*. at 12, ¶ 32. Plaintiff alleges that in actuality, NYIT has an unofficial policy of passing all students. *Id*. at 11 ¶ 31.

Throughout fall 2016 and winter 2017, Relator's department chair requested that Relator change certain grades he assigned and pass all students. *Id*. ¶ 52. In November 2016, Relator's department chair informed him that all students in his classes needed to receive passing grades and that Relator should change his grading system accordingly, in part to "keep enrollment up and the revenue coming in." *Id*. at 12, ¶ 34. Relator refused to do so. *Id*. at 12, ¶ 34. The Complaint alleges that Relator "put [the chair] on notice of the fraudulent nature of this grade inflation scheme as it pertained to the submission of false claims to the government." *Id*. ¶ 52.

Relator alleges that, in retaliation for refusing to change the grades, the chair removed Relator from teaching one course and NYIT changed the grades of eleven students he taught in his two other courses. *Id*. ¶¶ 41, 53. Relator alleges that he told the dean of the school that these grade changes constituted fraud. *Id*. ¶ 59. Relator had failed over half of the students in one course and close to three quarters of the students in the second course. *Id*. Ex 4. Seven grades were changed from failing to passing grades and four were changed from a "C" to a "B" or "B+." *Id*. Six failing grades assigned by Relator were not changed. *Id*. For the following semester, in retaliation for refusing to change the grades, Relator was removed from teaching four of his classes and only taught one class of one student. *Id*. ¶¶ 56, 59. In retaliation "for refusing to go along with the fraudulent scheme and refusing to pass students or raise their grades who were not entitled to such

---

[2] The Complaint contains inconsistent paragraph numbering, repeating paragraph numbers in certain cases. For clarity, the page number is provided when a repeated paragraph number is cited.

3

changes," NYIT "failed to renew his contract for the next semester, effectively terminating his employment." *Id.* ¶¶ 59, 60.

## PROCEDURAL HISTORY

Relator initiated the action on August 29, 2018. ECF Nos. 1 and 12. The Complaint was filed under seal per the FCA so that the government could investigate the allegations. 31 U.S.C §3730(b)(2). On December 3, 2020, after the government declined to intervene, the Court unsealed the Complaint. ECF No. 11. On February 10, 2021, Relator served the Complaint upon Defendant NYIT. ECF No. 16. NYIT filed a motion to dismiss on April 1, 2021. ECF No. 24. On April 20, 2021, Relator filed an amended complaint. ECF No. 27. The Court denied without prejudice NYIT's motion to dismiss and granted NYIT 40 days to file a new motion to dismiss in light of the amended complaint. ECF No. 29. NYIT filed the instant motion to dismiss on May 20, 2021.

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id*. When considering a motion to dismiss, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See Famous Horse Inc. v. 5th Ave. Photo Inc*., 624 F.3d 106, 108 (2d Cir. 2010). However, the court need not credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678, 681 (citing

4

*Twombly*, 550 U.S. 544). The complaint must provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Port Dock & iStone Corp. v. Oldcastle Northeast. Inc.*, 507 F.3d 117, 121 (2d Cir. 2007) (citing *Twombly*, 550 U.S. at 555).

Under the FCA, "any person who . . . knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" faces civil liability. 31 U.S.C. § 3729(a). "[F]raud under the FCA has two components: the defendant must submit or cause the submission of a claim for payment to the government, and the claim for payment must itself be false or fraudulent." *United States ex rel. Chorches as Trustee for Bankr. Estate of Fabula v. Am. Med. Response, Inc.*, 865 F.3d 71, 83 (2d Cir. 2017) (internal quotation marks and citations omitted). Although, "Rule 9(b) permits scienter to be averred generally . . . we have repeatedly required relators to plead the factual basis which gives rise to a strong inference of fraudulent intent." *United States ex rel. Tessler v. City of New York*, 712 F. App'x 27, 29 (2d Cir. 2017) (internal quotation marks and citations omitted).

In addition to the facial plausibility required by Rule 12(b)(6), complaints alleging violations of the False Claims Act must meet the heightened pleading standard imposed by Fed. R. Civ. P. 9(b). *Gold v. Morrison-Knudsen Co.*, 68 F.3d 1475, 1477 (2d Cir. 1995). Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstance constituting fraud or mistake." Fed. R. Civ P. 9(b). Thus, fraud allegations are sufficient under Rule 9(b) where the complaint "(1) detail[s] the statements (or omissions) that the relator contends are fraudulent, (2) identif[ies] the speaker, (3) state[s] where and when the statements (or omissions) were made, and (4) explain[s] why the statements (or omissions) are fraudulent." *Fin.*

*Guar. Ins. Co. v. Putnam Advisory Co.*, *LLC*, 783 F.3d 395, 403 (2d Cir. 2015) (internal quotation marks and citations omitted).

Rule 9(b) does not apply to FCA retaliation claims. *Chorches*, 865 F.3d at 95. Further, "proving a violation of § 3729 is not an element of a § 3730(h) cause of action." *Graham Cnty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 545 U.S. 409, 416 n.1 (2005). Thus, Section 3730(h) "protects an employee's conduct even if the target of an investigation or action to be filed was innocent." *Id*. at 416. Although "[t]his Court has yet to articulate a test for deciding when a relator has set forth a claim for retaliation under section 3730(h), district courts in this Circuit, as well as our sister circuits, have generally required a relator to show that (1) he engaged in activity protected under the statute, (2) the employer was aware of such activity, and (3) the employer took adverse action against him because he engaged in the protected activity." *Chorches*, 865 F.3d at 95 (internal quotation marks and citations omitted).

Additionally, the NYFCA "is closely modeled on the federal FCA. . . . [and] New York courts rely on federal FCA precedents when interpreting the NYFCA." *U.S. ex rel. Bilotta v. Novartis Pharms. Corp.*, 50 F. Supp. 3d 497, 509 (S.D.N.Y. 2014) (internal quotation marks and citations omitted). Thus, the Court's analysis under the FCA also applies to the NYFCA.

## DISCUSSION

### I. False Claims Act

The Court finds that Relator fails to state a claim under the FCA for false statements or false claims. Specifically, Relator does not adequately allege the submission of false claims to the government. While a relator need not allege the actual submission of false claims based on personal knowledge, a *qui tam* complaint that pleads on information and belief that such claims were actually submitted must (1) "make plausible allegations that the bills or invoices actually submitted

to the government were uniquely within [the defendant's] knowledge and control," and (2) "adduce specific facts supporting a strong inference of fraud." *Chorches*, 865 F.3d at 83 (internal quotation marks and citations omitted).

Relator's case falls on the second prong as Relator has not established a strong inference of fraud. Relator argues that he can neither access the claims submitted by NYIT because "they are in the exclusive possession of the Defendant and confidential," nor can he access students' financial aid information because that information is "highly confidential" and exclusively within NYIT's knowledge. Opp'n Br. at 7, 9, ECF No. 35. While the Court credits that Relator would not be privy to the particulars of NYIT's financial aid claims and student financial aid information, he has put forward no facts to establish the requisite "strong inference" that NYIT submitted fraudulent claims. Relator alleges "eleven representative examples of false claims that NYIT made to the Government," referring to the eleven students whose grades were allegedly changed. FAC ¶ 39. However, there are no facts alleged that NYIT submitted any claims to the government with respect to these eleven students, nor any facts alleged that these students even receive financial aid.[3]

There is simply no link between the changed grades and a scheme to receive government funding. Relator does not point to any statements from NYIT in which they claim that they sought to change the grades to secure money from the government. Relator also does not reference any documents revealing that NYIT was seeking to do so. Relator only mentions a conversation with the department chair in which the chair "suggested" that Relator change his grading system in part to "keep enrollment up and the

---

[3] The Complaint references the fact that 99 percent of "first-time, full-time undergraduate students" at NYIT receive financial aid as support for the assertion that these eleven students received financial aid. FAC at 18 n.2. However, it appears that the eleven students were all students in Relator's graduate-level classes. *Id*. Ex. 4.

7

revenue coming in." FAC at 12, ¶ 34. This comment does not lend a strong inference of fraud on the government; there is no mention of financial aid, government funds, or any grading requirements for financial aid. Thus, as Relator alleges "only hypotheses and conclusory allegations," his FCA claim fails. *Tessler*, 712 F. App'x at 30.

## II. Retaliation

The FCA's retaliation provision protects "lawful acts done by the employee . . . in furtherance of an action under [the FCA] or other efforts to stop 1 or more [FCA] violations." 31 U.S.C. § 3730(h)(1). Accordingly, "the FCA protects two kind [sic] of conduct: (1) lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under the FCA, and (2) other efforts to stop one or more violations of the FCA." *Weslowski v. Zugibe*, 14 F.Supp.3d 295, 310 (S.D.N.Y. 2014) (internal quotation marks and citations omitted). With respect to the second form of protected activity, "a retaliation claim can be stated so long as the employee was engaged in efforts to stop an FCA violation, even if the employee's actions were not necessarily in furtherance of an FCA claim." *United States v. N. Adult Daily Health Care Ctr.*, 205 F. Supp. 3d 276, 298 (E.D.N.Y. 2016) (internal quotation marks and citations omitted). The current version of the FCA makes "clear that it covers . . . retaliation against not only those who actually file a *qui tam* action, but also against those who plan to file a *qui tam* that never gets filed, who blow the whistle internally or externally without the filing of a *qui tam* action, or who refuse to participate in the wrongdoing." *Dhaliwal v. Salix Pharms., Ltd.*, 752 F. App'x 99, 100 (2d Cir. 2019).

Here, Relator has alleged that he refused to change his grades and refused to partake in NYIT's alleged scheme. He also alleged that he informed the NYIT administration that their efforts to alter grades constituted fraud. At this early stage, it is inapposite that Relator did not specify

that the fraud involved government funding. *See Dhaliwal*, 752 F. App'x at 101 (finding that the district court erred in "not affording [relator] the benefit of all reasonable inferences" by concluding at summary judgment that relator "failed to supply evidence that she was engaged in protected activity, because she did not come forward with evidence from which one could reasonably infer that her complaints . . . were directed at exposing or avoiding a fraud upon the Government" (internal quotation marks and citations omitted)). The Second Circuit has explained that Congress's latest amendments to the FCA intended to "broaden[ ] the universe of protected conduct under § 3730(h), at least with respect to 'efforts to stop' FCA violations." *Chorches*, 865 F.3d at 97. Relator's allegations satisfy this broadened understanding of efforts to stop the FCA violations.

In the same vein, Relator meets the second prong of the retaliation test, that NYIT was aware of his protected activity. He has properly alleged that NYIT had knowledge of his protected activity as he advised the department chair and a dean that he refused alter his grades and that he believed their efforts to change the grades constituted fraud.

Relator's retaliation claim fails on the third prong. Relator has not alleged an actionable adverse action. An adverse employment action is "a materially adverse change in the terms and conditions of employment," which can include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." *Sanders v. N.Y. City Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004) (internal quotation marks and citations omitted). The removal of Relator as instructor from his courses is not an adverse employment action. Relator "does not allege any resulting loss in wages" or loss of "other material benefits," and therefore his "course assignments and the composition of [his] classes cannot be

considered adverse employment actions." *Klein v. New York Univ.*, 786 F. Supp. 2d 830, 847 (S.D.N.Y. 2011); *see also Boise v. Boufford,* 121 F. App'x 890, 892–93 (2d Cir. 2005) (holding that an "assignment to [Plaintiff] of four courses rather than five, when the average course load . . . was less than four and when [Plaintiff] does not allege any resulting loss in wages, does not constitute [an] adverse employment action"].

With respect to the non-renewal of his employment contract, the Court notes that Relator was hired as a visiting professor, which by its nature is ordinarily a temporary position concluding at the end of a term or the academic year. Indeed, Relator's allegation that NYIT failed to renew his contract implies that his position was only intended to last one year. The non-renewal of an employment contract can be an adverse action only under specific circumstances not present here. Namely, "where an employee *seeks* renewal of an employment contract, non-renewal of an employment contract constitutes an adverse employment action." *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 501 (2d Cir. 2009) (holding that in the Title VII context, Plaintiff "suffered an adverse employment action because she was denied the requested continued employment" (emphasis added)). Relator has not alleged that he actively sought renewal of the contract. Thus, Relator's retaliation claims must be dismissed.

### III.   NYFCA

I decline to exercise jurisdiction over the state law claims. *See* 28 U.S.C. § 1367(c)(3) (providing that the district court "may decline to exercise supplemental jurisdiction" once the court "has dismissed all claims over which it has original jurisdiction"). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon*

*Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). As the Court has dismissed all federal claims, the Court declines to exercise supplemental jurisdiction over the state law claims and dismisses these claims without prejudice.

## CONCLUSION

For the reasons above, the Court **GRANTS** Defendant's motion to dismiss. Accordingly, the Clerk of Court is respectfully directed to terminate the motion pending at ECF No. 30 and close the case.

**SO ORDERED.**
**Dated: March 31, 2022**
    **New York, New York**

_____
**ANDREW L. CARTER, JR.**
**United States District Judge**